346 So.2d 787 (1977)
Harry L. SMITH, Jr., Plaintiff-Appellant,
v.
QUALITY TRANSPORT, INC. et al., Defendants-Appellees.
No. 11202.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearing Denied June 13, 1977.
*788 Arthur J. Cobb, Baton Rouge, of counsel for plaintiff-appellant.
William C. Kaufman, III, and James H. Morgan, III, Baton Rouge, of counsel for defendants Quality Transport, Inc., et al., appellees.
Robert D. Hoover, Baton Rouge, of counsel for the intervenor United States Fidelity & Guaranty Co., appellant.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
SARTAIN, Judge.
This is a personal injury action arising out of a multi-vehicle accident which occurred on U.S. Highway 61 (Airline Highway) south of Baton Rouge on May 30, 1974. The collision involved a late model pickup truck driven by plaintiff-appellant, Harry L. Smith, Jr.; a tractor-trailer rig driven by defendant-appellee, Donald G. Warner, and owned by defendant-appellee, Quality Transport, Inc. (Quality); and a tractor-trailer rig driven by Hershel E. Kysar and owned by Matlack Trucking, Inc. (Matlack).
Plaintiff brought suit against Warner, Quality and Quality's liability insurers, Protective Insurance Company and American Re-Insurance Company. United States Fidelity & Guaranty Co. (USF&G), workmen's compensation insuror of plaintiff's employer, H. L. Smith, Inc., intervened, seeking recovery against defendants for payments made to plaintiff under the policy.
Following trial on the merits, a jury rendered a verdict in favor of the defendants, dismissing plaintiff's suit and USF&G's intervention. Plaintiff and intervenors have appealed from that verdict.
There is little dispute as to how the accident generally occurred. Warner was driving the Quality truck in the outside northbound lane of the highway at about 50 to 55 m. p. h. behind and in the same lane as the Matlack truck, driven by Kysar. The Matlack truck was travelling at 45 to 50 m. p. h., having slowed to allow an auto travelling ahead of him to turn off the highway. Plaintiff was driving in the inside northbound lane at a rate of speed faster than either of the tractor-trailer rigs. As plaintiff passed the Quality truck, the two vehicles made contact, with the left front bumper of the Quality truck meeting the right rear bumper of plaintiff's pickup truck. The force of this initial collision caused plaintiff's truck to veer out of control and collide with the side of the Matlack truck driving ahead. From there, plaintiff's truck careened onto the wide median separating the north and south bound lanes of the highway, where it came to rest.
The pivotal issue we must now face is: did the initial collision between plaintiff's truck and the Quality truck occur in the inside or the outside lane of travel.
Plaintiff maintains that the Quality truck drifted into plaintiff's lane of travel as plaintiff was passing; while defendants, on the other hand, deny these allegations and assert that it was plaintiff who drifted into defendant's lane of travel. Both plaintiff and defendant Warner testified that the accident occurred in his respective lane; but neither saw the other actually cross into the wrong lane prior to the collision. Plaintiff testified that he felt control of the vehicle being taken away from him as he passed the Quality truck and that the rear end of his truck began being lifted up. He remembers nothing else after that. Warner testified that he did not see plaintiff's truck before the collision, that he did not see the collision until he heard it, and that plaintiff came out of nowhere to hit him. He said that he was in his proper lane when the collision occurred.
Kysar, driver of the Matlack truck, did not see the collision between plaintiff's and defendants' trucks, and was not aware of *789 the accident until immediately prior to the impact of plaintiff's pickup truck with the cab of the Matlack truck. At that point he saw plaintiff's truck about to collide with him.
Trooper Tullier, who investigated the accident, testified that he was unable to determine which lane the vehicles were in when the first impact occurred.
Due to the absence of direct evidence identifying the lane in which the initial collision took place, other than Warner's testimony, both parties introduced expert testimony.
Plaintiff's witness was Mr. Andrew J. McPhate, accepted by the court as an expert in the area of dynamics (defined by Mr. McPhate as the study of the interaction of moving objects and the forces created by that movement). His conclusion, drawn from the physical evidence available, was that the Quality truck had been moving at an angle toward plaintiff's truck when the initial collision occurred. He could not ascertain which lane the collision occurred in, although he thought it more probable that it happened in plaintiff's lane. Physical evidence relied upon by him were: trajectory of the pickup after the initial collision, testimony as to the speed of the tractor-trailer rig, the nature of the damage to Smith's truck and the Quality truck as shown by photographs.
Defendants' witness, Dr. Olin K. Dart, was accepted by the court as an expert in dynamics and accident reconstruction. He failed to find enough physical evidence upon which to conclude that the vehicles collided at an angle. He felt that the accident could have occurred in Quality's lane of travel.
It is important to note that the conclusions were reached without benefit of certain information, namely, the speed of plaintiff's truck at the time of the initial collision, the location of the initial collision, and the precise distance between the Quality truck and the Matlack truck at the time of the accident. Estimations of these factors were used to arrive at the stated conclusions.
Thus, it is apparent to us that there was evidence before the jury which furnished a reasonable factual basis for its verdict in favor of the defendants. The jury was required to evaluate conflicting conclusions drawn by two experts, each well-qualified in the subject matter in controversy. We must give great weight to factual conclusions of the trier of fact. Where there is conflict in the testimony, reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring Co., 283 So.2d 716 (La. 1973), Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3rd Cir., 1971).
Plaintiff appellant asserts that the trial judge erred in failing to instruct the jury as to the purpose of the Louisiana statute which reduced the previous 70 m. p. h. speed limit to 55 m. p. h. He asserts that had the jury received this instruction it could have applied the correct law of the case, the duty-risk test of negligence, more appropriately. There exists no requirement in the law that the jury be instructed as to the purpose of a statute, the violation of which is an issue in the case. Plaintiff asserts that failure to give this instruction caused the jury to believe that plaintiff was under a statutory duty to obey the posted speed limit and that a violation of that duty rendered him negligent per se. There is nothing in the record to suggest that the jury deliberated under this assumption. Further, the jury was instructed adequately on the issue of plaintiff's contributory negligence. Requested instructions are properly refused when the subject matter is irrelevant or sufficiently covered elsewhere in the charge. Darbonne v. Southern Farm Bureau Casualty Ins. Co., 300 So.2d 506 (La.App. 3rd Cir. 1974). Thus, we find no manifest error in the jury's verdict.
For the above and foregoing reasons, the judgment of the district court is affirmed at appellant's cost.
AFFIRMED.